UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GEORGE L. VONTRESS,

          Plaintiff,

      v.

STATE OF NEVADA et al.,

          Defendants

Case No.  2:18-cv-01746-RFB-PAL

SCREENING ORDER

Plaintiff, a prisoner in the custody of the Nevada Department of Corrections ("NDOC") who is housed at the Saguaro Correctional Center[1] in Eloy, Arizona, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*.  (ECF Nos. 1, 1-1).  The matter of the filing fee shall be temporarily deferred.  The Court now screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A.

**I.**     **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be

---

[1] Saguaro Correctional Center is a private prison owned by CoreCivic.  *See* CoreCivic at http://www.corecivic.com/facilities/saguaro-correctional-center (last visited November 19, 2018).

liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient.  *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."  *Id.*  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.      SCREENING OF COMPLAINT**

In the complaint, Plaintiff sues multiple defendants for events that took place while he was incarcerated at High Desert State Prison ("HDSP") and Southern Desert Correctional Center ("SDCC") in Southern Nevada and Saguaro Correctional Center ("SCC") in Eloy, Arizona.  (ECF No. 1-1 at 1).  Plaintiff sues Defendants James Dzurenda (NDOC director), D. Nevens (NDOC warden), Jo Gentry (NDOC warden), Frank Dreeson (NDOC assistant warden), Dr. Pena (NDOC medical provider), Damien Henninger (CoreCivic CEO), T. Thomas (SCC warden), D. Marr (SCC health services administrator), C. Fuller (SCC medical provider), Racheal Williams (SCC nurse), SDCC, HDSP, SCC,

State of Nevada, CoreCivic, and John Does. (*Id.* at 2-7). Plaintiff alleges 15 counts and seeks monetary damages and injunctive relief. (*Id.* at 33, 36).

The complaint alleges the following: Plaintiff was born with acute osteo-arthritis. (*Id.* at 7). On May 16, 2015, while at HDSP, prison officials subjected Plaintiff to a random urine analysis which indicated ethynol in Plaintiff's system. (*Id.* at 8). Prison officials issued Plaintiff a notice of charges and put him in administrative segregation ("ad-seg"). (*Id.*) At the preliminary disciplinary hearing, Plaintiff pled not guilty to alcohol consumption and told the hearing officer that "a person's body produces ethynol if they have diabetes." (*Id.*) The officer noted that Plaintiff thought he must be a diabetic even though he was not aware of being diabetic. (*Id.*)

A month later, Lt. John Doe held a disciplinary hearing. (*Id.*) Plaintiff reiterated that there must be a medical reason for the false positive for alcohol. (*Id.*) Lt. John Doe agreed that a blood test would resolve the issue. (*Id.*) Lt. John Doe ordered a blood test and stated that, if the test demonstrated that Plaintiff was diabetic, Lt. John Doe would dismiss the notice of charges and restore Plaintiff's privileges. (*Id.*) One month later, prison officials conducted a blood test. (*Id.*) However, after many requests to Lt. John Doe, Plaintiff never learned the results of the blood test. (*Id.*)

On November 10, 2015, after being housed in ad-seg for six months for alcohol consumption, caseworker Barrett held a six-month review. (*Id.* at 8-9). After explaining to her that he had not had a disciplinary hearing to resolve the issue, Barrett made some calls. (*Id.*) Barrett told Plaintiff that he would be returning to general population the next day. (*Id.*) She did not know the results of the blood test but informed Plaintiff that the administration had instructed her to submit Plaintiff on the transfer list and send him back to general population. (*Id.*)

Over the next two months, Plaintiff sent numerous requests to Lt. John Doe. (*Id.*) After Lt. John Doe ignored the requests, Plaintiff contacted Nevens to advise him of the situation. (*Id.* at 9-10). Nevens did not respond to Plaintiff. (*Id.* at 10). Plaintiff sent a

/ / /

request to medical provider John Doe.  (*Id.*)  John Doe medical provider told Plaintiff in person that Plaintiff did not have diabetes.  (*Id.*)

In February 2016, Plaintiff had a settlement conference for another § 1983 action which alleged that HDSP medical services had been deliberately indifferent to Plaintiff's osteo-arthritis.  (*Id.*)  After the settlement conference, prison officials transferred Plaintiff to SDCC where Plaintiff saw an orthopedic specialist who diagnosed Plaintiff with osteo-arthritis.  (*Id.*)  The specialist also acknowledged that Plaintiff had a limited range of motion in his left ankle due to the calcification of bone spurs.  (*Id.*)  The specialist recommended a double mattress to support Plaintiff's pressure points and minimize back pain.  (*Id.*)  On June 13, 2016, SDCC medical services authorized a double mattress.  (*Id.* at 11).  SDCC medical services refused to address Plaintiff's need for orthopedic braces despite multiple complaints of pain.  (*Id.*)  After continuously complaining about pain in both knees and ankles, prison officials x-rayed Plaintiff's knees, ankles, and lower back in 2017 which showed osteo-arthritis.  (*Id.*)  An SDCC medical provider finally authorized orthopedic compression braces for both knees and ankles and medically-restricted Plaintiff to the bottom tier and bottom bunk.  (*Id.*)  However, medical services refused to provide Plaintiff a back brace and medically-restrict Plaintiff to a flat yard.  (*Id.*)

In August 2017, after continuous complaints of pain, Plaintiff saw Dr. Pena.  (*Id.*)  Dr. Pena did not believe that Plaintiff had osteo-arthritis and did not think that Plaintiff needed orthopedic braces.  (*Id.*)  Dr. Pena thought that Plaintiff was too young to have arthritis.  (*Id.*)  In December 2017, prison officials transferred Plaintiff to SCC in Arizona.  (*Id.*)  Dr. Pena sent a transfer summary to SCC which stated that Plaintiff had no medical issues, medical limitations, or medications even though Plaintiff's medical records contradicted those statements.  (*Id.* at 11-12).  Plaintiff's medical records demonstrated that prison officials had given Plaintiff pain medication, a double mattress, and braces.  (*Id.* at 12).

SCC security staff confiscated Plaintiff's orthopedic compression braces because there was allegedly no medical need for them.  (*Id.*)  SCC staff produced Dr. Pena's

transfer summary.  (*Id.*)  Thomas advised the Nevada inmates that they had been transferred because they were either "hardcore gangbangers or involved in extorting other inmates."  (*Id.*)  Thomas advised that these inmates were "Nevada's most dangerous and destructive inmates" and would be housed in ad-seg not general population.  (*Id.*)  Plaintiff has never been in a gang, engaged in extortion, or fought anyone.  (*Id.*)  The contract between NDOC and CoreCivic warned the NDOC that CoreCivic "intended to only expend a minimal amount of money on medical services and encouraged NDOC to refrain from transferring any inmates with 'special' medical needs."  (*Id.*)

At SCC, Dr. Fuller x-rayed Plaintiff's knees, ankles, and lower back and stated that none of the x-rays detected any signs of arthritis. (*Id.* at 13).  Plaintiff appealed to Thomas and told Thomas to look at the NDOC medical records. (*Id.*)  However, Thomas denied the appeal stating that he chose to believe Dr. Fuller instead. (*Id.*)  Plaintiff contacted Marr, a health services administrator, and explained that Dr. Fuller had misrepresented the truth but Marr failed to respond.  (*Id.*)

Plaintiff continued to complain of knee, ankle, and lower back pains.  (*Id.*)  SCC medical services eventually prescribed Plaintiff pain medication but refused to return Plaintiff's orthopedic braces and issue a double mattress.  (*Id.*)  In April 2018, SCC medical staff treated Plaintiff for a minor infection and issued a urine test.  (*Id.*)  The staff found that Plaintiff's sugar level was abnormally high and ordered a blood test.  (*Id.*)  A medical provider told Plaintiff that the blood test indicated that Plaintiff had diabetes and that "ethynol within a person's system [was an] indication of diabetes."  (*Id.* at 14).  The medical provider stated that nothing about diabetes would necessitate the use of orthopedic braces.  (*Id.*)  After Plaintiff failed to convince the medical provider that he needed orthopedic braces and a double mattress, the provider stated, "if you want or need all that, you should have done more to follow the rules in Nevada. If you had done that, you would not [have been] classified to have been transferred to CoreCivic."  (*Id.*)
/ / /

On May 4, 2018, during medication call, Plaintiff was in the shower when the medical staff came to the cells. (*Id.*)  That day, SCC security told Nurse Williams that Plaintiff was in the shower. (*Id.*)  She responded that it was "not [her] job to chase down nobody" and left. (*Id.*)  Plaintiff informed security that he was in pain and needed his medication. (*Id.*)  Security went to the next pod and informed Williams that Plaintiff was in pain, needed his medication, and could not wait 12 hours until the next med-call. (*Id.*)  Williams told security that she was not going back to give Plaintiff his medication and "too bad" for Plaintiff's pain. (*Id.* at 15).  Plaintiff called the control booth and told them that Nurse Williams forgot to give him his pain medication. (*Id.*)  The control booth contacted Nurse Williams who responded that "she did not forget about Plaintiff and had someplace else to go." (*Id.*)  After Plaintiff spoke to a supervisor, the supervisor reported that Nurse Williams had left for the day and had made a medical record that Plaintiff had refused his medication. (*Id.*)  The pod officer told the supervisor that Plaintiff never had the opportunity to accept or refuse his medication. (*Id.*)  Plaintiff eventually received his medication after eight hours of pain and suffering. (*Id.*)  Plaintiff had to wait a total of 20 hours in between med-calls. (*Id.*)

In April 2018, SCC medical saw Plaintiff for a minor bacterial infection on the gland of his penis. (*Id.* at 16).  A nurse gave Plaintiff anti-fungus cream which caused the foreskin to swell, close around the gland, and cause painful urination. (*Id.*)  After filing an emergency medical request, Plaintiff saw a nurse practitioner who gave Plaintiff a packet of triple antibiotic ointment. (*Id.*)  A medical provider told Plaintiff to continue the use of the antibiotic ointment because it seemed to help. (*Id.*)  The medical provider ordered Plaintiff a tube of antibiotic ointment because the packets were inadequate in Plaintiff's situation. (*Id.* at 17).  However, after weeks of complaining about pain and no ointment, Plaintiff learned that the nurses were aware of Plaintiff's ointment order but said that "due to the homosexual activities of the general population inmates, SCC medical services decided to discontinue to give out anything that could be used as a sexual aid." (*Id.*)  At his next appointment, the medical provider again ordered Plaintiff a tube of antibiotic

ointment and stated that there was no new written policy or procedures to withhold the antibiotic ointment and that if medical had started to do so the practice was not officially authorized or sanctioned. (*Id.* at 18). Medical services refused to give Plaintiff the tube of ointment causing Plaintiff's foreskin to swell and cause pain and discomfort. (*Id.*) This lasted for over 30 days. (*Id.*) After several weeks of grievances, Plaintiff finally received his antibiotic ointment on August 16, 2018. (*Id.*)

### A.   Count I

In Count I, Plaintiff sues Lt. John Doe for Fourteenth Amendment violations for due process and equal protection. (ECF No. 1-1 at 19). Specifically, Plaintiff alleges that John Doe knew that Plaintiff had a serious medical condition which justified dismissing the disciplinary write-up and reinstatement of privileges. (*Id.*) However, John Doe disregarded the appropriate disciplinary process causing Plaintiff to remain in ad-seg for 180 days without procedural due process. (*Id.*)

### *Equal Protection*

As an initial matter, the Court dismisses the equal protection claim without prejudice. There are no allegations in the complaint that support an equal protection claim against John Doe.

### *Due Process*

The Court interprets Plaintiff's due process claim as an ad-seg due process claim because Plaintiff remained in ad-seg for 180 days. Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* The Supreme Court held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

When a prisoner is placed in ad-seg, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). After the prisoner has been placed in ad-seg, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9. An inmate has the right to notice and the right to be heard. *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992). The Ninth Circuit has held that where the prisoner alleges material differences between the conditions in general population and ad-seg, the prisoner's procedural due process claim should not be dismissed on the pleadings. *See Jackson v. Carey*, 353 F.3d 750, 755-57 (9th Cir. 2003).

The Court finds that Plaintiff states a colorable due process claim against Lt. John Doe. Based on the allegations, prison officials placed Plaintiff in ad-seg after he tested positive for ethynol. At the disciplinary hearing, which could also be construed as an ad-seg review hearing, Lt. John Doe stated that prison officials would test Plaintiff's blood to decide whether they had enough evidence to discipline Plaintiff, i.e. keep him in segregation. Liberally construing the allegations, Lt. John Doe found out that Plaintiff had diabetes at some point but failed to pass that information on in order to release Plaintiff from ad-seg. As such, it appears that Lt. John Doe knew that he did not have the evidence to justify segregating Plaintiff but failed to disclose that information. This claim will proceed against Lt. John Doe (when Plaintiff learns his identity).[2]

**B.     Count II**

_____

[2] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may either move to substitute the true names of Doe Defendant(s) or move to amend his complaint to assert claims against the Doe Defendant(s) at that time.

In Count II, Plaintiff sues Lt. John Doe for Eighth Amendment deliberate indifference to serious medical needs. (ECF No. 1-1 at 20). Plaintiff asserts that his blood test came back positive for diabetes but John Doe failed to disclose this fact to Plaintiff and permitted Plaintiff to walk around with diabetes untreated from 2015 through 2018. (*Id.*) Diabetes requires medical attention. (*Id.*) John Doe's actions demonstrated indifference or a hostile attitude toward Plaintiff's medical needs. (*Id.*)

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff states a colorable deliberate indifference to serious medical needs claim against Lt. John Doe.  Liberally construing the allegations, John Doe knew that Plaintiff had diabetes after receiving the blood test results but purposely chose not to tell Plaintiff that he had diabetes despite the diagnosis being the purpose of the blood test.  As a result, Plaintiff walked around for three years not knowing that he had a serious medical condition that he could have started to treat earlier. This is sufficient to state a colorable claim on screening. This claim will proceed against Defendant Lt. John Doe (when Plaintiff learns his identity).

### C.     Count III

In Count III, Plaintiff alleges the following:   Plaintiff sues Nevens for Eighth Amendment deliberate indifference to serious medical needs.   (ECF No. 1-1 at 21). Plaintiff alleges that he advised Nevens about the circumstances surrounding his placement in ad-seg, i.e. blood test to determine diabetes over alcohol consumption.  (*Id.*) Nevens failed or refused to reply to Plaintiff's grievances making Nevens aware of Plaintiff's serious health risk.  (*Id.*)

To the extent that Plaintiff is suing Nevens for failing to respond to his grievances, the Court dismisses the claim, with prejudice, because prisoners have no stand-alone due process rights related to the administrative grievance process.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process).

To the extent that Plaintiff is alleging that Nevens was deliberately indifferent to Plaintiff's serious medical needs, Plaintiff fails to state a colorable claim.  Plaintiff does not allege that Nevens knew that Plaintiff had diabetes.  Thus, Nevens cannot be deliberately indifferent to Plaintiff's serious medical needs.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his

subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983").

Nonetheless, the Court finds that Plaintiff does allege a supervisory liability claim for ad-seg due process violations. Based on the allegations, Plaintiff informed Nevens that he was being held in ad-seg for a prolonged period of time awaiting the results of his blood test and that Nevens did nothing. The Court finds that this is sufficient to state a colorable claim for screening purposes against Defendant Nevens.

**D. Count IV**

In Count IV, Plaintiff sues HDSP medical provider John Doe for Eighth Amendment deliberate indifference to serious medical needs. (ECF No. 1-1 at 22). John Doe is the medical provider who administered Plaintiff's blood test. (*Id.*) John Doe also told Plaintiff that his blood test was negative for diabetes. (*Id.*)

The Court liberally interprets Plaintiff's allegations as claiming that John Doe knew that Plaintiff had diabetes but told Plaintiff that he did not have it. As such, the Court finds that Plaintiff states a colorable deliberate indifference to serious medical needs claim against John Doe medical provider (when Plaintiff learns his identity).

However, the Court notes that, to the extent that Plaintiff is attempting to allege a medical malpractice claim, he fails to state a claim. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

/ / /

/ / /

/ / /

- 12 -

**E.      Count V**

In Count V, Plaintiff sues Lt. John Doe, John Doe medical provider, and Nevens for conspiracy for deliberate indifference to Plaintiff's serious medical needs.  (ECF No. 1-1 at 23).

"To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989).  The plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

Liberally construing the complaint, the Court finds that Plaintiff states a colorable conspiracy claim against Lt. John Doe and John Doe medical provider.  Based on the allegations, the Doe defendants spoke to each other and knew that Plaintiff tested positive for diabetes but chose not to tell him.  This is sufficient to state a colorable conspiracy claim on screening.  However, the Court finds that Plaintiff does not allege sufficient facts to implicate Nevens in the conspiracy because the complaint does not allege that Nevens knew that Plaintiff had diabetes.  Instead, Plaintiff states that he grieved to Nevens about being in ad-seg without knowing the results of his blood test.  The Court dismisses Nevens without prejudice from this claim.

**F.      Count VI**

In Count VI, Plaintiff sues HDSP for Eighth and Fourteenth Amendment violations. (ECF No. 1-1 at 24).  The Court dismisses this count, with prejudice, as amendment would be futile.  HDSP is an inanimate building, not a person or entity subject to liability.  *See Allen v. Clark Cnty. Det. Ctr.*, 2:10-CV-00857-RLH, 2011 WL 197201, *4 (D. Nev. Jan. 20, 2011) ("The law defines persons as including natural persons (*i.e.*, human beings) as well as corporations and political subdivisions. However, objects such as buildings do not fit within this definition.").

### G.    Count VII

In Count VII, Plaintiff sues Dr. Pena for Eighth Amendment deliberate indifference to serious medical needs. (ECF No. 1-1 at 25).  Plaintiff alleges that Dr. Pena intentionally disregarded the orthopedic specialist's previous diagnosis without thoroughly examining Plaintiff. (*Id.*)  Additionally, Dr. Pena rescinded the recommendations of the orthopedic specialist and other SDCC medical provider who regularly examined Plaintiff. (*Id.*)  Dr. Pena also falsified Plaintiff's transfer summary by stating that Plaintiff had no serious medical needs, had not been prescribed any medication, and had no physical limitations. (*Id.*)

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Additionally, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

The Court finds that Plaintiff states a colorable deliberate indifference to serious medical needs claim against Dr. Pena. Liberally construing the complaint, it appears that Dr. Pena knew that Plaintiff had serious medical issues but consciously disregarded those issues when he falsely claimed that Plaintiff had no serious medical needs, physical limitations, or pain issues in order to transfer Plaintiff to SCC. This claim will proceed on screening.

### H.    Count VIII

In Count VIII, Plaintiff sues Warden Gentry for Eighth Amendment deliberate indifference to serious medical needs and conspiracy. (ECF No. 1-1 at 26).  Plaintiff

alleges that Gentry, at SDCC, looked at Plaintiff's medical records before authorizing the extra mattress recommended by the orthopedic specialist. (*Id.* at 2, 26). Gentry was deliberately indifferent to Plaintiff's medical needs when she authorized his transfer to SCC knowing that CoreCivic had no intention of providing medical attention to Nevada inmates with serious medical needs. (*Id.* at 26). Dr. Pena assisted Gentry in falsifying Plaintiff's medical transfer summary for Plaintiff. (*Id.*)

The Court finds that Plaintiff states a colorable claim for both deliberate indifference to serious medical needs and conspiracy. Based on the allegations, Gentry knew that Plaintiff had a serious medical need but purposely transferred Plaintiff to an institution that would not provide Plaintiff with the medical care he needed. As such, this claim will proceed against Gentry. The Court also finds that Plaintiff states a colorable conspiracy claim against Dr. Pena and Gentry for falsifying Plaintiff's medical records in order to transfer Plaintiff to a prison that would not give him medical care.

## I. Count IX

In Count IX, Plaintiff sues Gentry and Dreeson for retaliation, conspiracy to retaliate, and denial of access to the courts. (ECF No. 1-1 at 27). Plaintiff alleges that Gentry and Dreeson are defendants in one of his pending § 1983 civil rights lawsuits. (*Id.*) In retaliation for that lawsuit, Gentry and Dreeson put Plaintiff on the transfer list to SCC even though Dzurenda instructed them that the transfer was for "Nevada's most dangerous and destructive inmates" but not "inmates with serious medical needs." (*Id.*) Plaintiff never had any write-ups for dangerous or destructive activities and had serious medical needs. (*Id.*) Nonetheless, Gentry and Dressen conspired to transfer Plaintiff out-of-state and inhibit his ability to litigate because SCC did not have a law library. (*Id.*)

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those

protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id.* at 568-69.

The Court finds that Plaintiff states colorable retaliation and conspiracy to retaliate claims against Gentry and Dreeson. Based on the allegations, Gentry and Dreeson purposely falsified Plaintiff's records in order to transfer him to another prison because Plaintiff had sued Gentry and Dreeson in another case. This is sufficient to state colorable claims on screening.

The Court finds that Plaintiff fails to state a colorable denial of access to the court claim at this time. Plaintiff has not pled sufficient facts for the court to determine if he states a colorable claim.[3] As such, this claim is dismissed without prejudice.

---

[3] Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Id.* at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id.* at 353 n.3, 354-

**J.      Count X**

In Count X, Plaintiff sues SDCC for Eighth Amendment violations.  (ECF No. 1-1 at 28). The Court dismisses this claim, with prejudice, as amendment would be futile. SDCC is an inanimate building, not a person or entity subject to liability.  *See Allen v. Clark Cnty. Det. Ctr.*, 2:10-CV-00857-RLH, 2011 WL 197201, \*4 (D. Nev. Jan. 20, 2011) ("The law defines persons as including natural persons (*i.e.*, human beings) as well as corporations and political subdivisions. However, objects such as buildings do not fit within this definition.").

**K.      Count XI**

In Count XI, Plaintiff sues Henninger, CoreCivic, Dzurenda, and the NDOC for Eighth Amendment deliberate indifference to serious medical needs and conspiracy. (ECF No. 1-1 at 29).  Specifically, Plaintiff alleges that the parties entered into a contract to deprive Nevada inmates of adequate medical attention.  (*Id.*)

As an initial matter, state prisoners housed in a private facility enjoy a right of action against private correctional providers under 42 U.S.C. § 1983.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 n.5 (2001).  Additionally, "[w]hen a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights . . . the official specifically intends for such violations to occur. Claims against such supervisory officials, therefore, do not fail on the state of mind requirement, be it intent, knowledge, or deliberate indifference." *OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012).

The Court finds that Plaintiff states colorable claims against Henninger, CoreCivic, and Dzurenda.  Based on the allegations, these parties developed a policy to provide minimal medical care to Nevada inmates regardless of their medical needs. This is sufficient to state colorable claims for deliberate indifference to serious medical needs and conspiracy on screening.

However, the Court dismisses the NDOC, with prejudice, from the entire case, as amendment would be futile, because the NDOC is an arm of the State of Nevada and is

55.

not a "person" for purposes of 42 U.S.C. § 1983.  *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Black v. Nevada Dep't of Corr.*, 2:09-cv-2343-PMP-LRL, 2010 WL 2545760, *2 (D. Nev. June 21, 2010).

### L.      Count XII

In Count XII, Plaintiff sues SCC, Henninger, CoreCivic, Fuller, Williams, and Doe SCC medical staff for Eighth Amendment deliberate indifference to serious medical needs and conspiracy.  (ECF No. 1-1 at 30).

As an initial matter, the Court dismisses SCC, with prejudice, from the case, as amendment would be futile.  SCC is an inanimate building, not a person or entity subject to liability.  *See Allen v. Clark Cnty. Det. Ctr.*, 2:10-CV-00857-RLH, 2011 WL 197201, *4 (D. Nev. Jan. 20, 2011) ("The law defines persons as including natural persons (*i.e.*, human beings) as well as corporations and political subdivisions. However, objects such as buildings do not fit within this definition.").

The Court will permit the deliberate indifference to serious medical needs claim to proceed against Fuller, Williams, and Doe SCC medical staff (when Plaintiff learns their identities) for screening purposes.  Based on the allegations, Fuller and Williams knew Plaintiff had serious medical issues but failed to provide treatment for Plaintiff's medical needs.  Doe SCC medical staff refused to give Plaintiff his antibiotic ointment.

The Court dismisses the conspiracy claim, without prejudice, because there are no allegations that the defendants had an agreement between each other to deny Plaintiff health care.  The Court also dismisses Henninger and CoreCivic from this claim, without prejudice, because it appears duplicative of the medical policy claim presented in Count XI.

### M.      Count XIII

In Count XIII, Plaintiff sues Fuller, Thomas, and Marr for Eighth Amendment deliberate indifference to serious medical needs and conspiracy based on denying him access to orthopedic compression braces for his osteo-arthritis.  (ECF No. 1-1 at 31).

/ / /

The Court finds that Plaintiff states a colorable deliberate indifference to serious medical needs claim. Based on the allegations, these defendants knew that Plaintiff had osteo-arthritis but purposely falsified medical records to prevent Plaintiff from obtaining compression braces causing him further pain.  This claim will proceed against Defendants Fuller, Thomas, and Marr.  However, the Court dismisses the conspiracy claim without prejudice because there are no allegations that these defendants had an agreement with each other to deny Plaintiff medical care.

### N.     Count XIV

In Count XIV, Plaintiff sues Williams for Eighth Amendment deliberate indifference to serious medical needs for refusing to give Plaintiff his medication.  (ECF No. 1-1 at 32). The Court dismisses this claim, without prejudice, as duplicative.  The Court addressed Williams's actions for deliberate indifference to serious medical needs in Count XII.

### O.     Count XV

In Count XV, Plaintiff sues the State of Nevada for Eighth Amendment violations. (ECF No. 1-1 at 33).  The Court dismisses this count and the State of Nevada from the complaint, with prejudice, as amendment would be futile.  Plaintiff can neither raise 42 U.S.C. § 1983 claims nor state law claims against the State of Nevada based on Eleventh Amendment sovereign immunity.  *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (holding that "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state" and that "[t]he Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature"); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding that states are not persons for purposes of § 1983); NRS § 41.031(3) (stating that the State of Nevada does not waive its Eleventh Amendment immunity).  The Ninth Circuit has explicitly held that 28 U.S.C. § 1367, the supplemental jurisdiction statute, "does not abrogate state sovereign immunity for supplemental state law claims."  *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006).

## III.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

IT IS FURTHER ORDERED that the Clerk of the Court file the complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

IT IS FURTHER ORDERED that the portion of Count I, alleging due process violations, will proceed against Defendant Lt. John Doe (when Plaintiff learns his identity). The portion of Count I alleging equal protection is dismissed without prejudice.

IT IS FURTHER ORDERED that Count II, alleging deliberate indifference to serious medical needs, will proceed against Defendant Lt. John Doe (when Plaintiff learns his identity).

IT IS FURTHER ORDERED that that the portion of Count III, alleging supervisory liability for ad-seg due process, will proceed against Defendant Nevens.  The portion of Count III, alleging supervisory liability for deliberate indifference to serious medical needs, is dismissed without prejudice.  The portion of Count III, alleging due process and grievances, is dismissed, with prejudice, as amendment would be futile.

IT IS FURTHER ORDERED that Count IV, alleging deliberate indifference to serious medical needs, will proceed against Defendant John Doe medical provider (when Plaintiff learns his identity).

IT IS FURTHER ORDERED that Count V, alleging conspiracy, will proceed against Defendants Lt. John Doe and John Doe medical provider (when Plaintiff learns their identities).  This claim is dismissed, without prejudice, against Defendant Nevens.

IT IS FURTHER ORDERED that Count VI is dismissed, with prejudice, as amendment would be futile.

IT IS FURTHER ORDERED that Count VII, alleging deliberate indifference to serious medical needs, will proceed against Defendant Dr. Pena.

IT IS FURTHER ORDERED that the portion of Count VIII, alleging deliberate indifference to serious medical needs, will proceed against Defendant Gentry.   The

portion of Count VIII, alleging conspiracy, will proceed against Defendants Gentry and Dr. Pena.

IT IS FURTHER ORDERED that the portion of Count IX, alleging retaliation and conspiracy, will proceed against Defendants Gentry and Dreeson. The portion of Count IX, alleging denial of access to the courts, is dismissed without prejudice.

IT IS FURTHER ORDERED that Count X is dismissed, with prejudice, as amendment would be futile.

IT IS FURTHER ORDERED that Count XI, alleging deliberate indifference to serious medical needs and conspiracy, will proceed against Defendants Henninger, CoreCivic, and Dzurenda.

IT IS FURTHER ORDERED that Count XII, alleging deliberate indifference to serious medical needs, will proceed against Defendants Fuller, Williams, and Doe SCC medical staff (when Plaintiff learns their identities). The portion of Count XII, alleging conspiracy, is dismissed without prejudice. Defendants Henninger and CoreCivic are dismissed without prejudice from this count.

IT IS FURTHER ORDERED that Count XIII, alleging deliberate indifference to serious medical needs, will proceed against Defendants Fuller, Thomas, and Marr. The portion of Count XIII, alleging conspiracy is dismissed without prejudice.

IT IS FURTHER ORDERED that Count XIV is dismissed without prejudice as duplicative of Count XII.

IT IS FURTHER ORDERED that Count XV is dismissed, with prejudice, as amendment would be futile.

IT IS FURTHER ORDERED that Defendants HDSP, SDCC, NDOC, and the State of Nevada are dismissed from this case, with prejudice, as amendment would be futile.

IT IS FURTHER ORDERED that as to **Defendants Nevens, Dr. Pena, Gentry, Dreeson, and Dzurenda**:

- Given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for ninety (90) days to allow Plaintiff and Defendant(s)

an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this ninety-day stay period, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before ninety (90) days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

- "Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

- If the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee.  This fee cannot be waived.  If Plaintiff is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account.  28 U.S.C. § 1915(b).  If Plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

- If any party seeks to have this case excluded from the inmate mediation program, that party shall file a "motion to exclude case from mediation" on or before twenty-one (21) days from the date of this order.  The responding party shall have seven (7) days to file a response.  No reply shall be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

- The Clerk of the Court shall electronically serve a copy of this order and a copy of Plaintiff's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

- The Attorney General's Office shall advise the Court within twenty-one (21) days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement.  No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

IT IS FURTHER ORDERED that as to **Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic**:

- This action is stayed for ninety (90) days to allow Plaintiff and the NDOC defendants an opportunity to settle their dispute before an answer is filed or the discovery process begins.  The Court directs Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic to contact the Attorney General's Office for purposes of participating in settlement discussions with Plaintiff.

- As discussed below, Plaintiff, through the U.S. Marshal's Office, shall serve Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic for the limited purpose of engaging in settlement discussions during the 90-day stay.

- Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic shall advise the Court within twenty-one (21) days of service whether they will enter a limited notice of appearance for the purpose of settlement.  No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

- After Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic

engage in settlement discussions, they shall file a version of the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. The report shall be filed on or before ninety (90) days from the date this order is entered.

• At the conclusion of the 90-day stay, if the parties proceed with this action, the Court will then issue an order setting a date for Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

• The Clerk of Court **SHALL ISSUE summonses** for Defendants Henninger, Thomas, Marr, Fuller, Williams, and CoreCivic, and deliver the same, to the U.S. Marshal for service.

• The Clerk shall send to Plaintiff six (6) USM-285 forms. The Clerk also shall send enough copies of the complaint (ECF No. 1-1) and this order to the U.S. Marshal for service on Defendant(s). Plaintiff shall have thirty (30) days within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to each Defendant on each form.

• Within twenty (20) days after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying which Defendant(s) were served and which were not served, if any.

• If Plaintiff wishes to have service again attempted on an unserved Defendant(s), then a motion must be filed with the Court identifying the unserved Defendant(s) and specifying a more detailed name and/or address for said Defendant(s), or whether some other manner of service should be attempted.

DATED this 20th day of November 2018.

_____

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GEORGE L. VONTRESS,

Plaintiff,

v.

STATE OF NEVADA et al.,

Defendants.

Case No.  2:18-cv-01746-RFB-PAL

REPORT OF ATTORNEY GENERAL
RE: RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of the Attorney General hereby complies.

### REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

- 26 -

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                         Print                              Signature

- 27 -

Address: _____          Phone:
                                                        _____
          _____          Email:
                                                        _____