UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEORGE L. VONTRESS<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>Defendants. | Case No. 2:18-cv-01746-RFB-BNW<br><br>**ORDER** |

Before the Court are the following motions: Plaintiff's Request for Judicial Clarification (ECF No. 38); Plaintiff's Motion Requesting Emergency Preliminary Injunction / Temporary Restraining Order (ECF Nos. 64, 65); Plaintiff's Motion to Request to File Exhibit-A Under Seal (ECF No. 66); Plaintiff's Renewed Request for Emergency Hearing Re: Preliminary Injunction / T.R.O. (ECF No. 76); Plaintiff's Motion to Declare Dire Urgency and Necessity for Emergency Hearing; Preliminary Injunction / T.R.O (ECF Nos. 83, 84); Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer Venue (ECF No. 85); Plaintiff's Motion Requesting Immediate Transfer Back to Nevada, For Good Cause (ECF No. 89); Plaintiff's Motion to Request Sanctions be Imposed (ECF No. 91); Plaintiff's Request for Leave to File Judicial Notice on Reverse Side of Facility Forms, Due to Placement in Segregation and Confiscation and Refusal to Return Necessary Legal Materials, Files and Records (ECF Nos. 92); and Plaintiff's Declaration of Real, Imminent Peril (ECF No. 94).

**I.     BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections ("NDOC") who until recently was housed at Saguaro Correctional Center ("SCC") in Eloy, Arizona. Plaintiff

filed the Complaint and a motion for leave to proceed in forma pauperis on September 10, 2018. ECF No. 1. Plaintiff simultaneously filed a Request for Emergency Preliminary Injunction / Temporary Restraining Order. ECF Nos. 2, 3. Plaintiff alleged that he was being denied medically-approved braces and an extra mattress as a result of deliberate indifference to his serious medical needs. Id.

On October 2, 2018, the Court held a hearing and requested that NDOC provide Plaintiff's medical records. ECF No. 6. The Court continued the hearing to address the motions pending review of the records. NDOC filed under seal Plaintiff's records on October 11, 2018. ECF Nos. 8, 9.

On October 19, 2018, the Court held a continued hearing. ECF No. 18. In a written Order issued October 23, 2018, the Court ordered that Plaintiff be provided his knee and ankle braces and a double mattress in compliance with certain requirements. ECF No. 13. However, on the basis of counsel's representations that SCC Warden Todd Thomas and SCC physician Dr. Hegman intended to provide Plaintiff with braces and a double mattress, the Court deferred ruling on Plaintiff's motion for injunctive relief.

On October 30, 2018, Plaintiff filed a Motion Requesting Keep Away Order alleging that SCC staff member Andrew Loza was threatening Plaintiff. ECF No. 15. Defendant CoreCivic entered a special appearance on November 5, 2018 and responded to the motion on November 7, 2018. ECF Nos. 20, 21.

The Court held a hearing regarding Plaintiff's Motion Requesting Keep Away Order on November 19, 2018 in Phoenix, Arizona. ECF No. 32. The Court heard testimony from both Plaintiff and Loza. Id. For the reasons stated on the record, the Court denied the motion. ECF No. 33. The Court also confirmed that Plaintiff had been provided with braces and a double mattress and therefore denied the pending Request for Emergency Preliminary Injunction / Temporary Restraining Order as moot. Id.

On November 21, 2018, the Court issued a Screening Order in this matter. ECF No. 34. The Court deferred decision on the application to proceed in forma pauperis. Id. The Court allowed certain due process, deliberate indifference, supervisory liability, conspiracy, and

retaliation claims to proceed. Id. The Court referred the case to the Inmate Early Mediation Program and filed the Complaint. ECF Nos. 34, 35.

On December 26, 2018, Plaintiff filed the instant Request for Judicial Clarification, to which no Response has been filed. ECF No. 38.

On February 15, 2019, an Early Mediation Conference was held. ECF No. 47. The parties did not reach a settlement, and the case returned to its normal litigation track. Id. On February 22, 2019, the Court granted the application for leave to proceed in forma pauperis, and summons was issued as to CoreCivic, Fuller, Hininger,[1] Marr, Thomas, and Williams ("CoreCivic Defendants"). ECF No. 50, 51. Defendants Dreeson, Dzurenda, Nevens, and Pena filed their Answer to the Complaint on April 23, 2019. ECF No. 70.

On April 19, 2019, Plaintiff filed the instant Motion Requesting Emergency Preliminary Injunction / Temporary Restraining Order and Motion to Request to File Exhibit-A Under Seal. ECF Nos. 64, 65, 66. Plaintiff alleged (1) that Defendants have failed to provide his legal materials in compliance with the Court's November 19, 2018 order and (2) that Defendants have refused to allow Plaintiff to send certain mail as "legal mail." Id. CoreCivic Defendants filed a Response on May 3, 2019. ECF No. 72. On May 7, 2019, Plaintiff filed the instant Renewed Request for Emergency Hearing Re: Preliminary Injunction / T.R.O. ECF No. 76.

On June 3, 2019, Plaintiff filed the instant Motion to Declare Dire Urgency and Necessity for Emergency Hearing; Preliminary Injunction / T.R.O. ECF Nos. 83, 84. CoreCivic Defendants filed a Response on June 10, 2019. ECF No. 93.

On June 3, 2019, CoreCivic Defendants filed the instant Motion to Dismiss or, Alternatively, Motion to Transfer Venue, as well as a Motion to Stay Discovery Pending Resolution of Motion to Dismiss. ECF Nos. 85, 86. Defendants argue (1) that the Court lacks personal jurisdiction as Plaintiff fails to allege that CoreCivic purposely direct any activities toward Nevada and (2) that venue is improper because the events giving rise to Plaintiff's claims occurred in Arizona. Plaintiff filed a Response on June 14, 2019. ECF No. 96. CoreCivic

---

[1] The Court adopts in this Order Defendants' spelling of this individual Defendant's name. Plaintiff's filings refer to this Defendant as Henninger.

Defendants filed a Reply on June 21, 2019. ECF No. 103.

On June 7, 2019, Plaintiff filed the instant Motion Requesting Immediate Transfer Back to Nevada, For Good Cause; Motion to Request Sanctions be Imposed; and Request for Leave to File Judicial Notice on Reverse Side of Facility Forms, Due to Placement in Segregation and Confiscation and Refusal to Return Necessary Legal Materials, Files and Records. ECF Nos. 89, 91, 92. On June 21, 2019, Dreeson, Dzurenda, Nevens, and Pena filed Responses to the Motion Requesting Immediate Transfer and to the Motion for Sanctions. ECF Nos. 99, 100.

On June 14, 2019, Plaintiff filed the instant Declaration of Real, Imminent Peril. ECF Nos. 94, 95.

On June 17, 2019, the Court issued an Order granting CoreCivic Defendants' Motion to Stay Discovery Pending Resolution of Motion to Dismiss. ECF No. 97. To undergo a jurisdictional analysis, the Court ordered that CoreCivic file (1) a copy of its contract governing the detention of Nevada Department of Corrections inmates and (2) any bid submitted to obtain the contract or any proposal submitted to expand existing services to include the contracted services. Id. CoreCivic Defendants attached this information to their Reply filed June 21, 2019. ECF No. 103.

On August 19, 2019, the Court received notice that Plaintiff has been relocated to High Desert State Prison in Indian Springs, Nevada. The Court held a status conference to confirm this fact on August 22, 2019. It was represented to this Court that Defendant Hininger is located in Tennessee, that Defendant Marr is located in Texas, and that Defendants Fuller, Thomas, and Williams are located in Arizona.

## II. LEGAL STANDARDS

### a. Motion to Dismiss

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable

to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

A plaintiff bears the burden of establishing personal jurisdiction. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1168 (9th Cir. 2006). To establish that personal jurisdiction over a defendant is proper, a plaintiff must show (1) that the forum state's long-arm statute confers personal jurisdiction and (2) that the exercise of jurisdiction comports with the constitutional principles of due process. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir.2002). Because N.R.S. § 14.065 permits Nevada courts to exercise jurisdiction to the same extent as the Constitution, this Court need only consider the constitutional principles of due process. Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).

In a civil action, venue is only proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A district court has the authority to dismiss an action if commenced in the improper venue, or to transfer it to any other district where it might have been brought. 28 U.S.C. § 1404(a); 28 U.S.C. § 1406(a). The decision whether to transfer a case is within the discretion of the district court and is made under "an individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). A court analyzing a motion to dismiss for improper venue may take into consideration facts outside the pleadings. See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996) (analyzing a motion to dismiss for improper venue involving a forum selection clause).

///

**b. Motions for Preliminary Injunction / Temporary Restraining Orders**

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134–35 (citation omitted).

**III. DISCUSSION**

    **a. CoreCivic Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer Venue**

CoreCivic Defendants move the Court to either dismiss the claims against them for lack of personal jurisdiction or to sever the claims against them and transfer them to the District of Arizona. CoreCivic Defendants also argue that the Court should dismiss Plaintiff's claims for deliberate indifference and conspiracy in Count XI for failure to state a claim. The Court addresses each request for relief in turn.

    **i. Personal Jurisdiction**

The Court first considers whether it can exercise general personal jurisdiction over CoreCivic Defendants. Over an entity, a court may exercise general personal jurisdiction in a state

where the entity is incorporated or has its principal place of business. Daimler AG v. Bauman, 571 U.S. 117, 138–39 (2014). Over an individual, a court may exercise general personal jurisdiction in a state where the person is domiciled. Milliken v. Meyer, 311 U.S. 457, 462–64 (1940). CoreCivic represents that it is not incorporated in Nevada, that its principal place of business is not located in Nevada, and that none of the individual CoreCivic Defendants reside in Nevada. The Court therefore finds that it lacks general personal jurisdiction.

The Court next evaluates specific personal jurisdiction. For both entities and individuals, specific personal jurisdiction is analyzed pursuant to the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

The Court finds that CoreCivic Defendants satisfy the three-prong test for specific personal jurisdiction and makes the following factual findings. First, at all relevant times, CoreCivic contracted with NDOC to detain inmates, including Plaintiff, at Saguaro Correctional Center. CoreCivic and NDOC contracted to the following forum selection clause:

> This Contract and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of Nevada, without giving effect to any principle of conflict-of-law that would require the application of the law of any other jurisdiction. The parties consent to the exclusive jurisdiction of and venue in the First Judicial District Court, Carson City, Nevada for enforcement of this Contract, and consent to personal jurisdiction in such court for any action or proceeding arising out of this Contract.

ECF No. 103 at 18. CoreCivic Defendants argue that Plaintiff, a non-party to the contract, cannot enforce the forum selection clause and that even if Plaintiff could, the clause does not apply to Plaintiff's tort-based claims. But while the Court agrees that this forum selection clause certainly does not operate on Plaintiff to bind him to the instant forum, it does demonstrate that CoreCivic

Defendants purposefully facilitated and supervised the incarceration of a Nevada resident pursuant to a contract that is expressly governed by, and construed according to, Nevada law. The Court further finds that by entering such a contract CoreCivic cannot claim that it did not or could not anticipate litigation in courts in Nevada surrounding its incarceration of Nevada residents. While these findings "standing alone" do not by themselves confer jurisdiction, they "should [not] be ignored" in considering whether a defendant has purposefully availed itself to the benefits and protections of a State's laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985).

The Court therefore further considers whether CoreCivic Defendants engaged with Nevada or a Nevada state agency "deliberately," rather than randomly or fortuitously, or whether the contract creates "continuing obligations" between CoreCivic Defendants and Nevada. Id. at 475–76. Here, both considerations are true. The Court finds factually that CoreCivic Defendants did not contract with Nevada randomly; CoreCivic actively prepared a bid in pursuit of such a contract, in response to NDOC's request for proposals by vendors "capable of operating and performing core correctional activities on behalf of the State of Nevada, in compliance with all applicable state and federal laws and NDOC Administrative Regulations for housing, custody, *medical and mental health treatment*, and programming of offenders." ECF No. 103 at 23 (emphasis added). The contract between CoreCivic and NDOC also creates a continuing obligation to house up to 200 male inmates from Nevada for over two years. ECF No. 103 at 12. Based on the forum selection clause electing to be governed by Nevada law, CoreCivic's purposeful preparation of a bid directed at Nevada, and CoreCivic's two-year commitment to detain and provide care to Nevada inmates, the Court therefore finds that CoreCivic's purposeful activity satisfies the first prong of the specific personal jurisdiction analysis.

Second, Plaintiff's claims against CoreCivic Defendants arise out of their alleged deliberate indifference to his medical needs while incarcerated. The Court finds factually that in its bid in pursuit of a contract with NDOC, CoreCivic committed to complying with NDOC's healthcare standards and Nevada law and to bearing all costs and responsibilities associated with healthcare services. ECF No. 103 at 147–49. These commitments are incorporated into the final contract. See id. at 3. The Court finds that Plaintiff's claims arise out of CoreCivic Defendants'

forum-related activity of incarcerating Nevada residents and that this activity included an explicit agreement to manage and supervise inmates', including Plaintiff's, medical care pursuant to their contractual obligations to NDOC and Nevada law.

Lastly, the Court finds that the exercise of jurisdiction comports with fair play and substantial justice. Plaintiff is a Nevada resident, convicted within the state of Nevada and incarcerated by the state of Nevada. While Plaintiff was temporary transferred and housed in Arizona, Plaintiff did not lose the benefits and protections of Nevada law that he would undisputedly have if he had remained housed in Nevada. Indeed, the Court finds that the contract between NDOC and CoreCivic explicitly creates standards based upon Nevada agency regulations and Nevada law. Moreover, CoreCivic cannot claim that it could have anticipated that it would have to defend itself in litigation in Nevada regarding its forum activities as there is a forum selection clause directed to Nevada. Finally, Plaintiff did not opt to be transferred to a contracted facility in a different state and, as a matter of fair play and substantial justice, must have carried with him the benefits and protections of Nevada law and the right to litigate matters related to his incarceration in his home forum.

CoreCivic Defendants argue that the contract between NDOC and CoreCivic should be understood as conduct purposefully directed towards Arizona, not Nevada, as the actual incarceration and any alleged resultant harm takes place in Arizona. But purposeful availment to another forum state as a result of contract need not be one-way. While it may be true that NDOC subjected itself to Arizona's jurisdiction by contracting to house its inmates at an Arizona-based facility, it is simultaneously true that CoreCivic subjected itself to Nevada's jurisdiction by purposefully contracting to receive, house, and medically treat NDOC's Nevada inmates. And, most importantly, CoreCivic agreed to be subject to Nevada standards and law as to the conditions of confinement regarding Nevada inmates.

The Court finds the activities alleged in Plaintiff's Complaint give rise to specific personal jurisdiction over CoreCivic Defendants in the District of Nevada. The Court therefore denies the CoreCivic Defendants' motion to dismiss on the basis of personal jurisdiction.

///

### ii. Venue

The Court next considers whether it is appropriate to transfer venue to the District of Arizona pursuant to "an individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498. In making this evaluation, the Court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Id. at 498–99. Additionally, "the relevant public policy of the forum state" is "at least as significant" as any of the above factors. Id.

The Court weighs these factors in the individualized context of the present dispute and finds that Plaintiff's choice of forum, the public policy of the forum state, and cost and convenience in light of Plaintiff's present residency in Nevada are the most important considerations in this case. The Court emphasizes that Plaintiff is a Nevada resident, currently residing in Nevada, who was simply temporarily subject to incarceration in Arizona. Though Plaintiff could theoretically be transferred anywhere at any time subject to NDOC's contacts, Plaintiff retains his Nevada residency. Because Plaintiff cannot choose where he is physically located as he experiences alleged harms related to his incarceration, his choice of his home state forum is heavily considered by this Court.

The Court also places great weight on Nevada public policy. The Court finds that Nevada retains a strong interest in the health and well-being of its inmates even when contracting to house them outside of Nevada's borders. Nevada has a duty to care for its dependent inmates consistent with Nevada law. It serves the public policy of the forum state for the District of Nevada to maintain and exercise its jurisdiction over relocated inmates, who must continue to rely on the state of Nevada to provide safe conditions and necessary healthcare. Finally, the selection of this forum prevents inmates housed outside of Nevada from being subject to different standards of care than those housed in Nevada.

1 　　　　　The Court additionally finds that, now that Plaintiff is again located in Nevada, cost and convenience favors the instant forum. There exists no legal basis or means to transport Plaintiff back to Arizona. Now that Plaintiff is housed in Nevada, all discovery in this litigation will necessarily proceed from Nevada. Plaintiff's relocation to Nevada, with no foreseeable instance of another transfer to Arizona, undermines CoreCivic Defendants' arguments as to convenience.

　　　　　CoreCivic Defendants argue that the claims against them could be severed such that Plaintiff's claims against NDOC-associated Defendants would proceed in Nevada and Plaintiff's claims against CoreCivic Defendants would proceed in Arizona. The Court finds that severing claims based on the same set of facts is not efficient and profoundly inconvenient. Moreover, Nevada is a more convenient forum given Plaintiff's currently residency in-state. The Court therefore finds that it is appropriate to retain claims against all Defendants in the District of Nevada, where Plaintiff and several Defendants reside. The Court notes that CoreCivic Defendants are located not just in Arizona but also in Texas and Tennessee, preventing the possibility of a single forum most convenient for all CoreCivic Defendants in any event.

### iii. Failure to State a Claim

　　　　　CoreCivic Defendants argue that in Count XI, Plaintiff fails to state a claim (a) for conspiracy against CoreCivic, Hininger, and Dzurenda and (b) for deliberate indifference against Hininger.

　　　　　In Count XI, Plaintiff alleges that CoreCivic, Hininger, and NDOC "entered into a contract . . . to house Nevada inmates, disregarding CoreCivic's written policy to deprive inmates/residents adequate medical attention." ECF No. 35 at 29. He further alleges that "CoreCivic disclosed, within the parameters of the above-mentioned contract, the intent to discourage medical expenditures" and that "CoreCivic advised NDOC, through Director J. Dzurenda to refrain from transferring inmates with 'serious medical needs.'" Id. He states that "Director J. Dzurenda, through NDOC and in conjunction with CEO D. Henninger, through CoreCivic, participated with concerted actions to express a hostile attitude or deliberate indifference towards Plaintiff's serious medical needs, individually and collectively." Id.

/ / /

The Court finds that Plaintiff has stated a claim for conspiracy against CoreCivic, Hininger, and Dzurenda. "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." Burns v. Cty. of King, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Crowe v. Cty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010). Here, Plaintiff alleges that these three Defendants entered into a contract with the intent to discourage, with deliberate indifference, medical expenditures for prisoners in their care. The claim contains sufficient factual matter, accepted as true, to state a conspiracy claim that is plausible on its face.

The Court agrees, however, that Plaintiff's complaint does not contain sufficient factual matter to state a claim for deliberate indifference against Hininger. "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. Plaintiff does not allege sufficient factual matter to support a claim that Hininger personally participated in a deprivation of care violative of the Eighth Amendment. The Court therefore dismisses the Eighth Amendment claim in Count XI against Hininger without prejudice.

### b. Plaintiff's Motions for Preliminary Injunction / Temporary Restraining Order

Plaintiff sought emergency injunctive relief from this Court on April 19, 2019 and on June 3, 2019. ECF Nos. 64, 65, 83, 84. Plaintiff also appears to request additional injunctive relief in his May 7, 2019 filing, titled Renewed Request for Emergency Hearing Re: Preliminary

Injunction/T.R.O, and in his June 14, 2019 filing, titled Declaration of Real, Imminent Peril. ECF Nos. 76, 94, 95. The Court addresses each motion in turn.

As an initial matter, the Court notes that Plaintiff also seeks to file Exhibit A to his first motion for injunctive relief under seal, ECF No. 66, and to receive a hearing before this Court regarding his requests for injunctive relief, ECF Nos. 76, 94. Exhibit A is a copy of mail Plaintiff was allegedly restricted from sending as "legal mail." Because the motion is not case-dispositive, the public interest in this document in minimal, and Defendants do not oppose the motion, the Court finds that good cause exists to file Exhibit A under seal. Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1179–80 (9th Cir. 2006). The Court additionally finds that it can determine the merits of Plaintiff's motions without a hearing.

### i. April 19, 2019 Filing (ECF Nos. 64, 65)

In Plaintiff's April 19, 2019 filing, he alleges (1) that Defendants have failed to provide his legal materials in compliance with the Court's November 19, 2018 order and (2) that Defendants have refused to allow Plaintiff to send certain mail as "legal mail."

Plaintiff first alleges a violation of the Court's order. This Court ordered on November 19, 2018 that "Plaintiff be restored to physical possession of his legal records by December 10, 2018." ECF No. 33. Plaintiff states that SCC unit manager Navarez informed Plaintiff in January 2019 that he had located only three out of four boxes of his materials. Pursuant to Navarez's advice, Plaintiff filed a tort claim requesting to be compensated $200 for the lost property. Plaintiff alleges that he has not been allowed to possess his legal material, but only to pick out the files and materials needed, with the remainder of the materials to be put back into storage.

CoreCivic Defendants' Response is largely consistent with these alleged facts. CoreCivic Defendants acknowledge that Plaintiff has a pending claim for the missing fourth box and that while there has been a problem with the claim form, both Plaintiff and Defendants are willing to settle the claim for $200. ECF No. 72 at 6. CoreCivic Defendants also state that while storing the three boxes in Plaintiff's cell would create a fire and safety hazard, Plaintiff has been permitted to go through his stored legal property and take out legal materials as needed. Id. at 4–5.

Plaintiff does not allege facts to support serious questions going to the merits. The alleged

facts support a finding that Defendants have complied with the Court's order to restore Plaintiff to physical possession of his legal records to the extent possible. Plaintiff has not alleged any barrier to accessing the courts as a result of the boxes being stored outside of Plaintiff's cell. Furthermore, as Plaintiff acknowledges that he has requested $200 for his missing fourth box of legal materials and that he has access to the remaining boxes, Plaintiff cannot demonstrate irreparable harm.

Plaintiff next alleges a violation of his First Amendment rights. He states that he has 23 copies of a letter requesting legal assistance, which is attached to his motion as Exhibit A. He intended to send the letter to "lawyers, journalist[s], members of Congress and criminal justice reform advocacy groups and a senator." ECF Nos. 64, 65 at 3. Plaintiff "attempted to submit the legal mail to the prison mail system, but, was denied the chance to do so." Id.

Again, Plaintiff does not allege facts to support serious questions going to the merits. Plaintiff frames the issue as whether or not the mail, which is not being sent to his lawyer or to a court, is legal mail. But even assuming it is legal mail, it can be opened and inspected by Defendants to make sure it does not contain contraband. See Nordstrom v. Ryan, 762 F.3d 903, 910 (9th Cir. 2014). The motion does not allege that Defendants have read, or threatened to read, the mail. Finally, the Court does not find the described letters to be "legal" mail in the context of Plaintiff sending or receiving legal advice in relation to his lawsuit.

Moreover, the contents of the mail at issue relate to his underlying criminal conviction, not his instant Section 1983 lawsuit. "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015). The Court interprets this law to include requests for injunction related to enforcement of the Court's orders in the course of litigation and Plaintiff's access to courts in pursuit of the instant litigation, but to exclude any requests for injunction that relate neither to the Complaint nor to the course of the instant litigation. This request for relief is unrelated to Plaintiff's Complaint or lawsuit and is therefore inappropriate for the Court's consideration.

### ii. May 7, 2019 Filing (ECF No. 76)

In addition to a request for a hearing before this Court, Plaintiff's motion at ECF No. 76

contains the following allegations of retaliation: (1) confiscation of his black ink pens, inhibiting his ability to do legal work; (2) an unmerited write-up following the Court's November 19, 2018 preliminary injunction hearing; (3) an attempt to serve CoreCivic Defendants by mail that was not delivered; (4) confiscation of three diabetic medications; (5) refusal to return Plaintiff's stored CD/radio, an item which other inmates are allowed to possess; (6) a statement by Andrew Loza that even though the CoreCivic contract with NDOC was ending, two inmates were not being sent back to Nevada but to another CoreCivic prison in another state "because of their litigations and grievances." Plaintiff also reiterates his allegations above regarding the lost box of materials, the storage of his materials outside his cell, and the refusal to process his 23 letters as legal mail.

The Court finds that each of these allegations fails to support either a finding of serious questions going to the merits or substantial likelihood of irreparable harm. Plaintiff's allegation that he does not have black pens to write out legal filings appears to be belied by the submission of the instant filing, written in black pen. Plaintiff alleges no irreparable harm as a result of the write-up following the Court's hearing, even accepting that it was retaliatory in nature. Any potential injunctive relief that would respond to Plaintiff's allegation that CoreCivic Defendants blocked a service attempt is mooted by the fact that CoreCivic Defendants have since accepted service. See ECF No 80. Plaintiff does not allege any irreparable harm as a result of the alleged confiscation of three diabetic medications or of his CD/radio. Lastly, Plaintiff alleges no irreparable harm as a result of Loza's alleged statement suggesting that two inmates would be transferred out of state for retaliatory purposes. Moreover, the Court reiterates that requests for injunctive relief that do not relate back to the claims in the Complaint or to the course of this litigation cannot be granted within the instant lawsuit. Pac. Radiation Oncology, 810 F.3d at 633.

### iii. June 3, 2019 Filing (ECF Nos. 83, 84)

In Plaintiff's June 3, 2019 filing, Plaintiff states the following: "Plaintiff has been placed in segregation and legal property confiscated. Plaintiff is unable[ ] to obtain copies, paper and/or materials necessary to adequately litigate and/or reply, respond or answer. Plaintiff's health and safety has been threatened." ECF Nos. 83, 84 at 1.

///

Plaintiff does not demonstrate serious questions going to the merits. His allegation regarding denial of materials necessary to litigate is again belied by the instant filing and his four additional filings dated June 7, 2019. ECF Nos. 89, 90, 91, 92. Plaintiff also does not demonstrate a substantial likelihood of irreparable harm, particularly as both Plaintiff and CoreCivic represent to the Court that Plaintiff was released from segregation on June 5, 2019. ECF No. 93 at 4; ECF No. 95 at 1. Plaintiff's general allegation that his health and safety is threatened contains insufficient factual matter for the Court to consider on its merits.

### iv. June 14, 2019 Filing (ECF Nos. 94, 95)

In Plaintiff's June 14, 2019 filing, Plaintiff alleges that when he was released from segregation on June 5, 2019, all of his legal materials were removed from his cell and are "destroyed" and "stolen." He alleges that the absence of his materials is causing him severe emotional distress.

The Court issued an order on November 19, 2018 that "Plaintiff be restored to physical possession of his legal records." ECF No. 33. Plaintiff must have regular access to the entirety of his legal materials. The Court denies without prejudice Plaintiff's filing because Plaintiff does not show a need for injunctive relief greater than or different from the relief that the Court has previously ordered. Moreover, the request is moot as Plaintiff is no longer housed by CoreCivic, and Plaintiff represented at the August 22, 2019 hearing that this problem does not occur at High Desert State Prison.

### c. Plaintiff's Additional Motions

At ECF No. 89, Plaintiff requests an immediate transfer from SCC to a Nevada prison. Plaintiff alleges that Nevada prisons have fully-equipped law libraries, while SCC has only a kiosk with limited access and does not provide trained staff. It appears that Plaintiff improperly attempts to present the Court with a First Amendment access to courts claim, unrelated to his instant Complaint. Moreover, Plaintiff does not establish any legal basis for this Court to order a transfer. Lastly, this request appears to be moot, as Plaintiff has since been transferred back to Nevada.

At ECF No. 91, Plaintiff requests that the Court impose sanctions on CoreCivic, Warden T. Thomas, CoreCivic Counsel, and the Deputy Attorney General Henry Kim. Plaintiff alleges

that it violates his constitutional rights to have his legal property stored in a facility warehouse. As discussed above, as long as Plaintiff is able to access and exchange his materials in furtherance of this litigation, Defendants neither violate this Court's order nor the Constitution by limiting the paper allowed in Plaintiff's cell and by storing Plaintiff's excess records outside of Plaintiff's cell. The Court finds no cause to impose sanctions at this time.

At ECF No. 92, Plaintiff seeks leave to use the reverse side of facility forms to file with this Court. Though Plaintiff has not demonstrated why this is necessary, the Court will grant this modest request. However, Plaintiff also includes several pages of miscellaneous allegations related to his diabetes care, his high blood pressure medication, the procedure leading up to his recent placement in segregation, the conditions of his segregation, and missing legal materials. It is unclear if Plaintiff requests from the Court any relief related to these allegations. To the extent Plaintiff does, the Court reiterates that requests for relief must be related to the claims in the Complaint or to Plaintiff's attempts to litigate those claims specifically.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer Venue (ECF No. 85) is GRANTED IN PART. The Eighth Amendment portion of Count XI is DISMISSED without prejudice with respect to Defendant Hininger. Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer Venue (ECF No. 85) is otherwise DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery Pending Resolution of Motion to Dismiss (ECF No. 86) is DENIED as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Judicial Clarification (ECF No. 38) is DENIED without prejudice, as the Court does not understand what relief, if any, Plaintiff requests from the Court in this Motion.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Emergency Preliminary Injunction / Temporary Restraining Order (ECF Nos. 64, 65); Plaintiff's Renewed Request for Emergency Hearing Re: Preliminary Injunction / T.R.O. (ECF No. 76); Plaintiff's Motion to Declare Dire Urgency and Necessity for Emergency Hearing; Preliminary Injunction / T.R.O (ECF

Nos. 83, 84); and Plaintiff's Declaration of Real, Imminent Peril (ECF No. 94) are DENIED. Plaintiff is reminded that the Court only has authority to issue injunctions directly related to the claims in Plaintiff's Complaint or to his ongoing ability to litigate those claims specifically.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Request to File Exhibit-A Under Seal (ECF No. 66) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Immediate Transfer Back to Nevada, For Good Cause (ECF No. 89) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Request Sanctions be Imposed (ECF No. 91) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Leave to File Judicial Notice on Reverse Side of Facility Forms, Due to Placement in Segregation and Confiscation and Refusal to Return Necessary Legal Materials, Files and Records (ECF Nos. 92) is GRANTED to the extent that Plaintiff seeks permission to use the reverse side of facility forms to write motions for filing with this Court, and otherwise DENIED.

DATED: September 27, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**